JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

APPENDIX H

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Brice, Tracy *see attached list
Severe-Clarke, Perlyn

**(b)** County of Residence of First Listed Plaintiff   Philadelphia
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
ID#50417          ID# 35754
Jill Fisher, Esq., and David F. McComb, Esq.
Zarwin, Baum, DeVito, Kaplan, Schaer & Toddy, P.C.
1515 Market St., Suite 1200, Phila, PA 19102
(215) 569-2800

## DEFENDANTS

Community Council for Mental Health & Mental
Retardation, Inc.*see attached list for additiona

County of Residence of First Listed Defendant   Philadelphia
(IN U.S. PLAINTIFF CASES ONLY)                        defendants

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                          and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury— | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☒ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | | | | | | Appeal to District |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. Section 1983

Brief description of cause: Retaliatory discharge from employment/First Amendment violations.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $
in excess of $150,000

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE                          DOCKET NUMBER

DATE 3/6/08

SIGNATURE OF ATTORNEY OF RECORD
*Jill Fisher*

### FOR OFFICE USE ONLY

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

APPENDIX I

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

Tracy Brice, et al       :         CIVIL ACTION
                         :
              v.          :
Community Council for Mental Health  :
and Mental Retardation, Inc., et al  :       NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. §2241 through §2255.      ( )

(b) Social Security -- Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits      ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.      ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)      (x )

(f) Standard Management – Cases that do not fall into any one of the other tracks.      ( )

| March 6, 2008 | Jill Fisher, Esquire | Plaintiffs |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-569-2800 | 215-569-1606 | jfisher@zarwin.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: Tracy Brice, 5737 Chestnut St., Phila., PA 19139 *see attached list for add'l plaintiff

Address of Defendant: Community Council for Mental Health & Mental Retardation, Inc. *see attached list
4900 Wyalusing Ave., Phila., PA 19131 for add'l defendant

Place of Accident, Incident or Transaction: 4900 Wyalusing Avenue, Philadelphia PA 19131
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))____  Yes☐  No☐

Does this case involve multidistrict litigation possibilities?  Yes☐  No☒

*RELATED CASE, IF ANY:*

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
Yes☐  No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
Yes☐  No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
Yes☐  No☒

---

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☒ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
   (Please specify)

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify)

## ARBITRATION CERTIFICATION
*(Check appropriate Category)*

I, Jill Fisher , counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☒ Relief other than monetary damages is sought.

DATE: March 6, 2008 _____ 50417
Attorney-at-Law Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

---

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: March 6, 2008 _____ 50417
Attorney-at-Law Attorney I.D.#

CIV. 609 (4/03)

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TRACY BRICE<br>5737 Chestnut Street,<br>Philadelphia, Pennsylvania 19139 | : | |
| | : | |
| and | : | **COMPLAINT** |
| | : | |
| PERLYN SEVERE-CLARKE | : | **AND JURY DEMAND** |
| 3131 Meeting House Road, M2<br>Boothwyn, Pennsylvania 19061<br>*Plaintiffs* | : | |
| | : | |
| v. | : | |
| | : | |
| COMMUNITY COUNCIL for MENTAL<br>HEALTH & MENTAL RETARDATION, Inc.<br>4900 Wyalusing Avenue<br>Philadelphia, Pennsylvania 19131; | : | **CIVIL ACTION NO.:** |
| | : | |
| DARIUS L. GILBERT<br>4900 Wyalusing Avenue<br>Philadelphia, Pennsylvania 19131; | : | |
| | : | |
| SHERMONT FOX<br>4900 Wyalusing Avenue<br>Philadelphia, Pennsylvania 19131; | : | |
| | : | |
| KIANA ROSS<br>4900 Wyalusing Avenue<br>Philadelphia, Pennsylvania 19131; | : | |
| | : | |
| RICARDO GOODMAN<br>4900 Wyalusing Avenue<br>Philadelphia, Pennsylvania 19131; | : | |
| | : | |
| SCHOOL DISTRICT of PHILADELPHIA;<br>440 North Broad Street<br>Philadelphia, Pennsylvania 19130; | : | |
| | : | |
| THOMAS M. BRADY, in his official<br>capacity as Interim Chief Executive Officer<br>of the School District of Philadelphia<br>440 North Broad Street<br>Philadelphia, Pennsylvania 19130; | : | |

CAROLYN JACKSON, individually and in :
her official capacity as Principal of Martha :
Washington Elementary School :
440 North Broad Street :
Philadelphia, Pennsylvania 19130 :
                        :
            and :
                        :
TONIA BROWN :
4900 Wyalusing Avenue :
Philadelphia, Pennsylvania 19131 :
               *Defendants* :

## JURISDICTION and VENUE

1.      Jurisdiction of this Court arises under 42 U.S.C. Section 1983 and 28 U.S.C. Sections 1343(3) and 1367(a) (supplemental jurisdiction).

2.      Jurisdiction of this Court for the pendant claims is authorized by F.R. Civ. P.18(a) and arises under the doctrine of pendant jurisdiction set forth in *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).

3.      Venue is proper pursuant to 28 U.S.C. Section 1391 (b) and (c).

## PARTIES

4.      Plaintiff, Tracy Brice ("Brice"), an adult resident of Philadelphia, Pennsylvania, brings this action to redress Defendants' conduct in conspiring to deprive her of her constitutional, statutory and common law rights when they terminated her employment with Community Council for Mental Health and Mental Retardation, Inc. ("Community Council") after she reported improper, unsafe and unlawful conduct on the part of Tonia Brown, a teacher at Martha Washington Elementary School, which conduct Plaintiff Brice reasonably believed placed the children under Tonia Brown's care at serious risk of physical and emotional harm.

5.      Plaintiff, Perlyn Severe-Clarke ("Severe-Clarke"), an adult resident of Philadelphia, Pennsylvania, brings this action to redress Defendants' conduct in conspiring to deprive her of her constitutional and statutory rights when they terminated her employment with Community Council after she reported improper, unsafe and unlawful conduct on the part of Tonia Brown, which conduct Plaintiff Severe-Clarke reasonably believed placed the children under Tonia Brown's care at serious risk of physical and emotional harm.

6.      Defendant, Community Council, is a non-profit corporation incorporated and existing under the laws of the Commonwealth of Pennsylvania with its principal offices located at 4900 Wyalusing Avenue, Philadelphia, Pennsylvania, 19131.  At all relevant times hereto, Defendant Community Council acted by and through its directors, officers, trustees, board members, employees and/or agents, and was Plaintiffs' employer.

7.      Defendant, School District of Philadelphia ("School District"), is a political subdivision of the Commonwealth of Pennsylvania with its principal offices located at 440 North Broad Street, Philadelphia, Pennsylvania, 19130, and provides educational services to students in Philadelphia's public schools.

8.      At all times relevant hereto, Defendant Community Council was contractually and/or otherwise affiliated with Defendant School District to operate, staff and provide, among other services, therapeutic / emotional classroom support for special needs children in Philadelphia public schools, including Martha Washington Elementary School, thereby performing a municipal function.

9.     At all times relevant hereto, Defendant Community Council was an agent of Defendant School District, and all directors, officers, trustees, employees and/or agents of Defendant Community Council acted within the course and scope of their agency.

10.    At all times relevant hereto, Defendant Community Council received funds, directly and/or indirectly, by or through the Commonwealth of Pennsylvania and/or a political subdivision authority, including the School District of Philadelphia.

11.    Defendant, Thomas M. Brady ("Brady"), an adult individual and a Pennsylvania resident, is the Interim Chief Executive Officer of Defendant School District.

12.    Defendant, Carolyn Jackson ("Jackson"), is an adult individual who, at all times relevant hereto, was employed by Defendant School District as Principal of Martha Washington Elementary School, a Philadelphia public school located at 766 North 44th Street, Philadelphia, Pennsylvania, 19104, and acted within the course and scope of her employment and in a supervisory position over Plaintiffs. Upon information and belief, Defendant Jackson is a resident of the Commonwealth of Pennsylvania.

13.    At all times relevant hereto, Defendant School District's directors, directly and/or indirectly, delegated to and clothed Defendant School District and Defendant Jackson, as Principal of Martha Washington Elementary School, with decision-making authority regarding Plaintiffs' placement in the classroom at Martha Washington Elementary School and her termination of employment from Defendant Community Council.

14.     Defendant, Tonia Brown ("Brown"), is an adult individual who, at all times relevant hereto, was employed by Defendant Community Council and assigned to Martha Washington Elementary School as a classroom teacher. Upon information and belief, Defendant Brown is a resident of the Commonwealth of Pennsylvania.

15.     At all times relevant hereto, Defendant Brown was a quasi-employee of Defendant School District and acted within the course and scope of her employment and in a supervisory position over Plaintiffs.

16.     Defendant, Darius L. Gilbert ("Gilbert"), is an adult individual who, at all times relevant hereto, was employed by Defendant Community Council as a clinical supervisor and was Plaintiffs' supervisor. Upon information and belief, Defendant Gilbert is a resident of the Commonwealth of Pennsylvania.

17.     Defendant, Shermont Fox ("Fox"), is an adult individual who, at all times relevant hereto, was employed by Defendant Community Council as a clinical supervisor and was Plaintiffs' supervisor.  Upon information and belief, Defendant Fox is a resident of the Commonwealth of Pennsylvania.

18.     Defendant, Kiana Ross ("Ross), is an adult individual who, at all times relevant hereto, was employed by Defendant Community Council as a teacher manager and was Plaintiffs' and Defendant Brown's supervisor.  Upon information and belief, Defendant Ross is a resident of the Commonwealth of Pennsylvania.

19.     Defendant, Ricardo Goodman ("Goodman"), is an adult individual who, at all times relevant hereto, was employed by Defendant Community Council as a teacher manager and was Plaintiffs' and Defendant Brown's supervisor.  Upon information and belief, Defendant Goodman is a resident of the Commonwealth of Pennsylvania.

20.    At all times relevant hereto, Plaintiffs were quasi-employees of Defendant

School District and acted within the course and scope of their employment.

## FACTS

21.    Plaintiffs incorporate by reference paragraphs 1 through 20 of this

Complaint as though fully set forth herein.

22.    In September, 2007, Plaintiffs were assigned by Defendant Community

Council to Martha Washington Elementary School to provide therapeutic / emotional

support for the students in Defendant Brown's classroom, which was an emotional

support classroom for children with special needs.  Plaintiff Severe-Clarke served as a

clinical therapist and Plaintiff Brice served as an associate counselor. At the time of

Plaintiffs' termination, there were twelve (12) students in the classroom who ranged in

age from 9 years old to 13 years old.

23.    On or about September 26, 2007, Plaintiff Severe-Clarke reported to

Defendant Gilbert that she had observed Defendant Brown engaging in improper,

unsafe and unlawful conduct, including, but not limited to:

  a.  forcing students to stand with their hands in the air, on one occasion for
      up to 2 hours;

  b.  withholding food (lunch) from the students; and

  c.  verbally abusing them, including but not limited to calling them names,
      for example calling one student "black, crispy and ashy" and another
      student "Turtle" who, because of mental and physical disabilities,
      moved and spoke slowly.

24.    In response to the above information provided by Plaintiff Severe-Clarke,

a meeting was held at Martha Washington School with Plaintiff Severe-Clarke and

Defendants Gilbert, Fox, Ross and Brown in attendance. Plaintiff was admonished by

Defendants Gilbert, Fox, and/or Ross that she needed to "work together" with Defendant Brown, but Defendant Brown was not reprimanded at that meeting about her improper, unsafe and unlawful conduct.

25.     In addition to the above-described improper, unsafe and unlawful conduct of Defendant Brown, Plaintiffs observed Defendant Brown's practice of requiring the students in her class to move their desks to the perimeter of the classroom and, at her direction and urging, making two students chosen by her engage in a fist fight in front of the other students in the classroom.

26.     On one particular occasion, when two students began fist fighting after being required to do so by Defendant Brown, Plaintiff Brice attempted to intervene but was told not to intervene by Defendant Brown.  Plaintiff Brice reported this incident to Defendant Community Council by placing a telephone call to the Human Resources department.

27.     Based on the fact that Defendant Brown did not stop making the students fight, Defendant Community Council took no appropriate action, if any at all, to put an end to Defendant Brown's wrongful conduct.

28.     On another occasion, Plaintiffs observed Defendant Brown pick up one student by the neck and shove him up against a wall, yelling at him, "Shut up! I've had enough of you."  Plaintiff Brice reported the incident to Defendant Fox.  Defendant Fox responded by stating to Plaintiff Brice, among other things, "Don't call me with nonsense like this."

29.     Prior to the above-described shoving incident, Plaintiff Severe-Clarke had advised Defendant Brown and teacher floater Carl Butler, an employee of Defendant

Community Council, that this particular student required a higher level of care because of, among other things, his physical and verbal aggressiveness, but the student was not placed in a higher level of care program.

30.     On or about the end of November or the beginning of December, 2007, Plaintiff Severe-Clarke told Defendant Gilbert at a face-to-face meeting about Defendant Brown's practice of making her students fist fight in the classroom in front of the other students.  Defendant Gilbert made no comment whatsoever to Plaintiff Severe-Clarke about Defendant Brown's actions, but simply went on to discuss other topics.

31.     Subsequent to the above-referenced face-to-face meeting, on Friday, December 7, 2007, at about 3:00 p.m., Defendant Ross called an impromptu, brief meeting with Plaintiffs to tell them that, starting on Monday, December 10, 2007, they would be required to sign in at the front desk of Martha Washington Elementary School at the start of the workday, even though they had never been required to sign in before. Plaintiffs were never given any written directive to that effect.

32.     Because (a) they had not been in the practice of signing in, (b) the instructions were given to them in such an informal way, and (c) their early morning duties required them, at times, to be stationed outside the school where the buses discharged the students, Plaintiffs admittedly forgot to sign in.

33.     However, at no time prior to their respective terminations on December 17, 2007 and December 18, 2007 did anyone from Defendant Community Council or from Defendant School District warn Plaintiffs, let alone remind them, that they were to sign in, despite Defendant Community Council's "Performance Management Counseling and Discipline" Policy in its employee handbook which states, "Performance

management is designed to turn the employee around and save them from termination. Insure that you have done everything possible to help the employee succeed."

34.    On Thursday, December 13, 2007, in the classroom, Plaintiff Brice videotaped on her camera cell phone one of Defendant Brown's "fights" between two students. In the video Defendant Brown can be seen goading the students on. When Defendant Brown realized that Plaintiff Brice had videotaped the fight, she pleaded with her, on several occasions, to erase the video, stating that she (Brown) "could be fired" and "the School District sued."

35.    Thereafter, in fear of being exposed and in an attempt to save her own job, Defendant Brown fabricated allegations that Plaintiffs were not doing their jobs and communicated these allegations, directly and/or indirectly, to all or some of the other Defendants.

36.    On Monday, December 17, 2007, a team meeting was held in Defendant Jackson's Office at Martha Washington Elementary School, *purportedly* to discuss a particular incident involving a student who had allegedly been put in a closet (that had no doors) by another child, and that the incident had not been reported by Plaintiff Severe-Clarke. In attendance at the team meeting were Ms. Jones, the school counselor, and Defendants Jackson, Fox, Ross and Goodman. Upon information and belief, a representative from Defendant School District (name and position unknown) also attended the meeting. Although Plaintiffs' job duties, and the Individuals with Disabilities Education Act, 20 U.S.C. Section 1400 *et seq*. ("ADEA"), required them to attend team meetings when the meetings concerned the behavior of the students,

Plaintiffs were intentionally not included in this team meeting and, in fact, were not even told that the meeting had taken place until their termination.

37.     Because of her preclusion from the above-mentioned team meeting, Plaintiff Severe-Clarke was not given an opportunity to explain that she had not observed the alleged "closet" incident and, thus, could not report an event she did not know about at the time.

38.     About one hour after the above-mentioned meeting had started (a mere four days – and just two school days – after the video was recorded), Defendant Goodman came to the classroom and told Plaintiffs to pack their belongings, leave the school and go back to Community Council.

39.     Late in the day on December 17, 2007, Plaintiff Brice was called into a meeting at Defendant Community Council. At the meeting were Defendants Fox and Goodman, Aulcie Perry, Human Resources representative, and Lamar Brooks (position unknown). Aulcie Perry advised Plaintiff Brice that she was being terminated because of alleged tardiness.

40.     At the termination meeting on December 17, 2008, in contravention of Defendant Community Council's progressive four stages of performance management stated in its employee handbook, Aulcie Perry handed Plaintiff Brice several "Warning Notices" dated December 10th, December 12th and December 13th about alleged tardiness on those dates.

41.     Plaintiff Brice had never seen the above-mentioned warning notices until the termination meeting, nor had any defendant discussed her alleged tardiness on those dates with her anytime prior to December 17th. Nonetheless, Plaintiff Brice was told to

sign the warning notices, even though the respective dates on the signature line on the three notices were the 10th, 12th and 13th of December, not December 17, the actual date the notices were handed to her.

42.     Also, at the termination meeting, Aulcie Perry read a letter aloud to Plaintiff Brice from Defendant Jackson, which stated, in part, that Defendant Jackson did not want them (Plaintiffs) in her school.  At the conclusion of the termination meeting, Defendant Fox stated to Plaintiff Brice that Community Council was not about to lose their funding from Defendant School District because of them (Plaintiffs).

43.     On December 18, 2007, Plaintiff Severe-Clarke was terminated from her employment with Defendant Community Council.  At the termination meeting were Aulcie Perry, Defendants Fox, Gilbert and Goodman and one other Community Council employee.  Plaintiff Severe-Clarke showed the individuals in attendance at the meeting the video of the fight recorded on Plaintiff Brice's camera cell phone.

44.     None of the Defendants in attendance at the termination meeting even asked Plaintiff Severe-Clarke any questions about the scene captured on the video or about Defendant Brown's practice of making her students fight each other, or any other reported wrongdoing on Defendant Brown's part.

45.     Aulcie Perry told Plaintiff Severe-Clarke that the reason for her termination was alleged tardiness and alleged substandard work (i.e., not reporting to Community Council the alleged incident of the student being placed in the closet by another student.)

46.     At the termination meeting, Aulcie Perry handed Plaintiff Severe-Clarke

three "Warning Notices" dated December 10th, December 12th and December 13th about alleged tardiness on those dates.  Plaintiff Severe-Clarke had never seen those warning notices until the termination meeting, nor had any Defendant discussed the alleged tardiness on those dates with her anytime prior to December 18th.  Nonetheless, Plaintiff Severe-Clarke was told to sign the documents, even though the dates on the signature lines were December 10th, 12th and 13th, not December 18th, the actual date the notices were handed to her.

47.     When Plaintiff Severe-Clarke protested that she had not received the write-ups prior to that date, in contravention of Defendant Community Council's employee handbook policies, Aulcie Perry responded, "We have a major funding source that does not want you in the school."

48.     Aulcie Perry also read to Plaintiff Severe-Clarke the above-referenced letter written by Defendant Jackson to Defendant Community Council that stated that Defendant Jackson did not want Plaintiffs in Defendant Brown's classroom.

49.     At the conclusion of the termination meeting, Aulcie Perry, attempted to grab certain documents from Plaintiff Severe-Clarke's hands and shoved her against the office wall, causing her pain to her shoulder.

50.     As a consequence of being terminated from her position at Martha Washington School, Plaintiff Severe-Clarke was also terminated from a second position she had with Defendant Community Council as a mobile therapist for three clients in their homes. No attendance or performance issues were ever raised with Plaintiff Severe-Clarke with regard to this position.

51.     In a December 21, 2007 "termination letter" addressed to Plaintiff Severe-Clarke, Aulcie Perry wrote, "Mrs. Severe-Clarke was banned from the premises at Martha Washington Elementary School by the principal Mrs. Jackson."

52.     Following their termination, Plaintiffs applied for and were awarded unemployment compensation benefits.  Defendant Community Council appealed the award of benefits awarded to Plaintiff Severe-Clarke only.  An unemployment compensation hearing was held on January 31, 2008 before Referee Rodney Dietrich.  The Referee affirmed the award of unemployment compensation benefits to Plaintiff Severe-Clarke, finding that Defendant Community Council had not followed its own discipline policies in terminating Plaintiff.

53.     Plaintiffs reported the wrongdoing on the part of Defendant Brown, as above-described, to Defendant Community Council because they reasonably believed that Defendant Brown's conduct was intentional, improper, unsafe, prohibited by school and/or school district policy and violated Pennsylvania's Child Protective Services Law ("CPSL"), 23 Pa.C.S. Section 6301 *et seq.* in that it was committed with disregard of a substantial and unjustifiable risk of physical and emotional harm to the students.

54.     However, at no time following Plaintiffs' reports of wrongdoing on the part of Defendant Brown did any of the Defendants report Defendant Brown's actions to any governmental department or authority, as required by the CPSL.

55.     The reasons given to Plaintiffs by Defendant Community Council for their termination were not the real reasons, but rather were a pretext and cover-up of the wrongdoing on the part of Defendant Brown, in part, in order not to jeopardize a

significant funding source and to protect themselves from potential lawsuits and civil penalties.

56.     In addition to avoiding potential lawsuits, Defendant School District, by and through its directors, officers, officials, agents and/or employees, concealed and suppressed the true facts surrounding the reported instances of wrongdoing, in part, to avoid having to report and respond to incidents of violence on school property, as required by law, and risk having the school placed on Pennsylvania's list of persistently dangerous schools.

57.     Defendant School District, by and through Defendant Jackson and/or others, acted in concert with and reached an agreement with Defendant Community Council and Defendants Brown, Gilbert, Fox, Ross and Goodman to terminate Plaintiffs' employment, in furtherance of Defendant School District's and Defendant Community Council's policy, practice, and/or custom of covering up acts of wrongdoing, such as above-described, and/or retaliating against individuals who report such wrongdoing to avoid potential legal or other consequences, said actions causing economic and emotional harm to the Plaintiffs.

58.     The Defendants' conduct was motivated by evil motive and/or intent and/or reckless and callous indifference to the Plaintiffs' federally and statutorily protected rights.

## COUNT I
## 42 U.S.C. SECTION 1983
## VIOLATION OF PLAINTIFFS' FIRST AMENDMENT
## RIGHT TO FREE SPEECH
(Against All Defendants)

59.     Plaintiffs incorporate by reference paragraphs 1 through 58 of this Complaint as though fully set forth herein.

60.     At all times relevant hereto, Plaintiffs' placement in Defendant School District's classroom at Martha Washington Elementary School was a governmental benefit and/or privilege, the deprivation of which triggers First Amendment scrutiny.

61.     At all times relevant hereto, the relationship between Defendant Community Council and Defendant School District, contractual or otherwise, was sufficiently close that the conduct of both Defendants, acting by and through their directors, officers, trustees, officials, agents and/or employees, acting within the scope of their employment, deprived Plaintiffs of their constitutional rights.

62.     At all times relevant hereto, Defendants Community Council, Gilbert, Fox, Ross, Goodman and Brown were clothed with and, in conspiracy with Defendants School District and Jackson, acted under the color and authority of state law in that Defendants School District and/or Jackson exercised coercive power and/or provided significant encouragement to Defendant Community Council so that Defendant Community Council's actions are fairly attributable to the State.

63.     At all times relevant hereto, Defendants School District and Community Council acted in accordance with their policy, practice and/or custom and/or ratified, by silence or otherwise, the unconstitutional acts of their subordinates, which directly caused constitutional harm to the Plaintiffs.

64.     At all times relevant hereto, Plaintiffs engaged in speech that was protected under the First Amendment of the United States Constitution as the speech involved matters of significant public concern, to wit, the physical and emotional safety and well-being of Philadelphia public school children.

65.     Plaintiffs' interest in their protected speech outweighs any countervailing interest on the part of Defendants, collectively and/or individually, in the effective or efficient operations of their businesses and/or institutions.

66.     The protected speech was a substantial and/or motivating factor in Plaintiffs being terminated from their employment, which was retaliatory in nature and constituted an adverse employment action and a deliberate indifference to the constitutional rights of the Plaintiffs.

67.     As a result of the retaliatory acts by the Defendants as above-described, Plaintiffs have been denied constitutionally and statutorily protected rights and have suffered economic and emotional damages.

**WHEREFORE,** Plaintiffs respectfully request this Court enter judgment in their favor and against Defendants, jointly and/or severally, as follows:

a.  For compensatory damages, including but not limited to back pay, front pay, actual damages, damages for personal humiliation, harm to reputation, pain and suffering and emotional distress and mental anguish;

b.  For injunctive relief in the form of reinstatement;

c.  For punitive damages (except against Defendants School District and Brady, and Defendant Jackson in her official capacity);

d.  For the costs of suit, reasonable attorneys' fees and interest;

e.  For such other legal or equitable relief as this Court may deem just and proper.

## COUNT II
## 42 U.S.C. SECTION 1983
## FIRST AMENDEMENT RETALIATION AND CONSPIRACY CLAIMS
(Against All Defendants)

68.     Plaintiffs incorporate by reference paragraphs 1 through 67 of this Complaint as though fully set forth herein.

69.     Plaintiffs were engaged in protected activity under the First Amendment to the United States Constitution, as above-described.

70.     Acting under color of state law, Defendants conspired to and did deprive Plaintiffs, in furtherance of the conspiracy, of their rights, privileges and/or immunities secured by the United States Constitution and laws by discharging them from their employment in retaliation for their reporting the above-described acts of wrongdoing on the part of Defendant Brown, said reports being of suspected child abuse under Pennsylvania's Child Protective Services Law, 23 Pa. C. S. Section 630 *et seq*.

71.     Defendants engaged in a conspiratorial, intentional cover-up of the wrongdoing on the part of Defendant Brown reported by Plaintiffs in that the Defendants concealed and suppressed the true facts surrounding the reported instances of wrongdoing to protect themselves, in part, from potential lawsuits and civil penalties.

72.     Defendant Community Council, by and through its agents and/or employees, participated in the cover-up also to avoid losing a significant funding source.

73.     There is a causal link between the Plaintiffs' protected activity and their termination, which constituted an adverse employment action, and which was pretextual and retaliatory in nature.

74.     The protected activity was a substantial and/or motivating factor in Plaintiffs' termination.

75.     As a result of the conspiracy and retaliatory acts by the Defendants,

Plaintiffs have been denied constitutionally and statutorily protected rights and have

suffered economic and emotional damages.

**WHEREFORE,** Plaintiffs respectfully request this Court enter judgment in their

favor and against Defendants, jointly and/or severally, as follows:

a.  For compensatory damages, including but not limited to back pay, front pay,
    actual damages, damages for personal humiliation, harm to reputation, pain and
    suffering and emotional distress and mental anguish;

b.  For injunctive relief in the form of reinstatement;

c.  For punitive damages (except against Defendants School District and Brady and
    Defendant Jackson in her official capacity);

d.  For the costs of suit, reasonable attorney's fees and interest;

e.  For such other legal or equitable relief as this Court may deem just and proper.

## COUNT III
## VIOLATION OF PENNSYLVANIA WHISTLEBLOWER LAW
### (43 P.S. Section 1421 *et seq.*)
(Against All Defendants Except Defendant Brady)

76.     Plaintiffs incorporate by reference paragraphs 1 through 75 of this

Complaint as though fully set forth herein.

77.     At all times relevant hereto, Defendant Community Council was a public

body under the Whistleblower Law because it received funds by or through the

Commonwealth and/or a political subdivision authority.

78.     At all times relevant hereto, Defendant Community Council, by and

through its directors, officers, employees and/or agents, and Defendants Fox, Gilbert,

Ross, Goodman and Brown, were employers under the Whistleblower Law because they

supervised Plaintiffs.

79.     At all times relevant hereto, Defendant School District was a public body and an employer under the Whistleblower Law.

80.     At all times relevant hereto, Plaintiffs were employees under the Whistleblower Law, 43 P.S. Section 1421 *et seq.*, because they performed services for wages under a contract of hire for a public body.

81.     The actions and/or inactions on the part of the Defendants, as above-described, constitute wrongdoing under the Whistleblower Law, in particular, but not limited to, a violation of the Pennsylvania Child Protective Services Law ("CPSL"), 23 Pa.C.S. Section 6301, *et seq.*, said law being designed and enacted to protect the interests of the public, including school age children in Philadelphia's public schools.

82.     The actions on the part of the Defendants, as above-described, violated the Whistleblower Law because they presented substantial and significant danger to the public health and/or safety, and were likely to cause imminent risk of physical and/or emotional harm, in particular, to the students who were under the care and supervision of Defendants.

83.     Plaintiffs' discharge from their employment in retaliation for making a good faith report of suspected child abuse in accordance with the CPSL constitutes a violation of the Whistleblower Act.

84.     As a result of the retaliatory acts by the Defendants, Plaintiffs have suffered economic and emotional damages.

**WHEREFORE**, Plaintiffs respectfully request this Court enter judgment in their favor and against Defendants, jointly and/or severally, as follows:

   a.  For compensatory damages, including but not limited to back pay, front pay, actual damages, damages for personal humiliation, harm to reputation, pain and

suffering and emotional distress and mental anguish;

b. For the costs of suit, reasonable attorneys' fees and interest;

c. For applicable civil fines under the Whistleblower Law;

d. For such other legal or equitable relief as this Court may deem just and proper.

### COUNT IV
### VIOLATION OF PENNSYLVANIA CHILD PROTECTIVE  SERVICES LAW
### (23 Pa.C.S. Section 6301 *et seq.*)
(Against All Defendants Except Defendant Brady)

85.     Plaintiffs incorporate by reference paragraphs 1 through 84 of this Complaint as though fully set forth herein as though fully set forth herein.

86.     At all times relevant hereto, Plaintiffs were "school employees" as defined under the Child Protective Services Law ("CPSL"), acting in the course and scope of their duties as school employees of Defendant School District.

87.     At all times relevant hereto, Plaintiffs were mandated reporters under the CPSL who made good faith reports of incidents of suspected child abuse observed by them in the classroom.

88.     Defendants, after receiving the above-referenced reports from Plaintiffs, failed in their duties, responsibilities and legal obligations under the CPSL to report or cause a report to be made to a department or authority in accordance with the CPSL.

89.     Plaintiffs' discharge from their employment in retaliation for making good faith reports of suspected child abuse constitutes a violation of the CPSL and resulted in economic and emotional damages.

**WHEREFORE,** Plaintiffs respectfully request this Court enter judgment in their favor and against Defendants, jointly and/or severally, as follows:

a. For compensatory damages, including but not limited to back pay, front pay, actual damages, damages for personal humiliation, harm to reputation, pain and suffering and emotional distress and mental anguish;

b. For punitive damages (except against Defendant School District and Defendant Jackson in her official capacity);

c. For the costs of suit, reasonable attorneys' fees and interest;

d. For such other legal or equitable relief as this Court may deem just and proper.

## COUNT V
## COMMON LAW CIVIL CONSPIRACY
(Against All Defendants except Defendant Brady)

90.     Plaintiffs incorporate by reference paragraphs 1 through 89 of this Complaint as though fully set forth herein as though fully set forth herein.

91.     At all times relevant hereto, Defendants acted with a common purpose to do an unlawful act, or a lawful act by unlawful means, to wit, terminating Plaintiffs in retaliation for their reports of wrongdoing on the part of Defendant Brown.

92.     At all times relevant hereto, Defendants acted with evil motive and an intent to injure Plaintiffs without legal justification.

93.     Defendants' acts were done in pursuance of a common purpose or design and resulted in legal damages to the Plaintiffs.

**WHEREFORE,** Plaintiffs respectfully request this Court enter judgment in their favor and against Defendants, jointly and/or severally, as follows:

a. For compensatory damages, including but not limited to back pay, front pay, actual damages, damages for personal humiliation, harm to reputation, pain and suffering and emotional distress and mental anguish;

b. For punitive damages (except against Defendant School District and Defendant Jackson in her official capacity);

c. For the costs of suit, reasonable attorneys' fees and interest;

d.  For such other legal or equitable relief as this Court may deem just and proper.

Respectfully submitted,

**ZARWIN, BAUM, DeVITO, KAPLAN,
SCHAER & TODDY, P.C.**

By: Jill Fisher, Esquire

By: David F. McComb, Esquire

1515 Market Street, Suite 1200
Philadelphia, PA  19102
Ph: (215) 569-2800
Fx: (215) 569-1606
*Attorneys for Plaintiffs*

Date: ___3/6/08_____